UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUGH McGINLEY, Individually, and          )
as Personal Representative of the Estate    )
of KEVIN P. McGINLEY, Deceased,           )
and GILLIAN McGINLEY,                      )
                                           )
          Plaintiffs,                      )
                                           )
v.                                         )
                                           )          CASE NO.: 8:11-CV-322-T-17MAP
DENNIS E. JETTON, STEPHEN C.              )
MAURIELLO, MORRIS E. LEGGETT,            )
JAMES LEE, CHARLES C. HALL,               )
MAXWELL R. DEY, JAMES D. SEWELL, )
JOHN R. DAVIS, WAYNE CHALU,               )
MARK A. OBER, RICHARD HURD,               )
CHRISTOPHER A. KNIGHT, DAVID              )
BRIERTON, RANDY M. SNOW,                  )
DIANE MARTINEZ, JOHN CZERNIS,           )
LAURENCE NODA, JUDSON CHAPMAN,)
DAWN CASE, and MELINDA MIGUEL,    )
all in their individual capacities, and CITY  )
OF TAMPA, FLORIDA, a Florida              )
municipal corporation,                     )
                                           )
          Defendants.                      )
_____)

## ORDER ON DEFENDANT, CITY OF TAMPA'S, MOTION TO DISMISS

This cause is before the Court on Defendant, City of Tampa's, Motion to Dismiss (Doc. 5)

and Plaintiffs' Response to Defendant, City of Tampa's, Motion to Dismiss (Doc. 16). For the

reasons set forth below, Defendant, City of Tampa's, motion is **GRANTED**.

## PROCEDURAL HISTORY

Plaintiffs, Hugh McGinley ("Mr. McGinley") and Gillian McGinley ("Mrs. McGinley"),

initially filed this action on December 10, 2010, in the Circuit Court for the Thirteen Judicial

Circuit in and for Hillsborough County, Florida. Defendants, Stephen Mauriello, Morris Leggett,

James Lee, Charles Hall, Wayne Chalu, Mark Ober, Richard Hurd, Judson Chapman, Dawn Case,
and Melinda Miguel, in their official capacities, and the City of Tampa, Florida ("the City"),
removed the case to the Middle District of Florida on February 16, 2011. Plaintiffs filed their
Amended Complaint on February 16, 2011.

Plaintiffs' Amended Complaint alleges twenty-two counts under 42 U.S.C. §1983 for
violations of Plaintiffs' constitutional rights to access to court, due process, and equal protection
under the Fifth and Fourteenth Amendments. Counts I-XXI contain the allegations against each
individual Defendant and the City, and Count XXII alleges a conspiracy, involving every
Defendant, to deprive the Plaintiffs of their civil rights. Defendants jointly filed their Answer to
Plaintiffs' Amended Complaint on February 16, 2011, except for Defendants Jetton and Dey who
jointly filed their Answer to Plaintiffs' Amended Complaint on March 4, 2011. The City filed its
Motion to Dismiss on February 16, 2011. Plaintiffs' filed their response on March 17, 2011, after
receiving an extension to file a response on March 11, 2011.

## STATEMENT OF FACTS

The following facts are submitted by the Plaintiffs in their Amended Complaint. The
Court recognizes these as "facts" only in regard to resolution of this pending Motion to Dismiss.

Hugh and Gillian McGinley are the parents and next of kin of Kevin McGinley, deceased.
(Pls.' Am. Compl. ¶¶2-3.) Mr. McGinley is the duly appointed Personal Representative of the
Estate of Kevin McGinley, which is currently being administered in the Probate Court of the
Sixth Judicial Circuit of Florida. (*Id.* ¶4.) On February 13, 1998, Kevin McGinley was struck
and killed by a truck on I-275 after allegedly being pushed into its path by one or more unknown
individuals. (*Id.* ¶¶5-6.)

2

Florida Highway Patrol ("FHP") investigated the death of Kevin McGinley and issued a Traffic Homicide Investigation report ("THI"), which concluded that Kevin died as a result of his own actions or other forces beyond anyone's control. (*Id.* ¶¶8, 22.) Kevin McGinley's death was investigated by Defendant Dennis Jetton, a corporal with FHP. (*Id.* ¶¶28, 29D.) Plaintiffs allege that Jetton carried out the investigation in an intentionally negligent and deceptive manner, suppressing and misrepresenting evidence, refusing to interview witnesses, and ignoring evidence that conflicted with the "official report." (*See id.* ¶¶29A-DD.)

On March 23, 2009, Plaintiffs received a report from the Office of Professional Compliance of FHP ("OPC"), which followed an internal investigation into the conduct of the officers investigating Kevin McGinley's death. (*Id.* ¶13.) The investigation was conducted between May 29, 2008 and February 2, 2009. (*Id.* ¶14.) The OPC report acknowledged that the THI report contained false or misleading information. (*Id.* ¶16.) Plaintiffs allege that they first became aware of the conspiracy to deprive them of their civil rights on December 11, 2006 after discovering handwritten notes from a witness interview that contradicted the official report. (*Id.* ¶¶19, 21.) Plaintiffs further allege that the investigation into Kevin McGinley's death remained open until February 2, 2009, and that they first became aware that their rights had been violated on March 23, 2009. (*Id.* ¶¶9-10, 15.)

At some point, the City of Tampa Police Department ("TPD") conducted an independent investigation into the death of Kevin McGinley and a review of the investigation by FHP.[1] (*Id.* ¶210A.) Plaintiffs allege that TPD failed to interview key witnesses; correct "obvious inadequacies, misstatements, misrepresentations and erroneous conclusions" contained in the THI report; or consider key evidence that contradicted the official report. (*See id.* ¶¶210D-I.)

---

[1] Plaintiffs' Amended Complaint does not indicate when TPD undertook this investigation/review, nor does it indicate who specifically was responsible for conducting the investigation..

Ultimately, TPD concluded that there was no reasonable basis to believe that the death of Kevin McGinley was the result of a criminal act, and that the investigation by FHP was more than thorough and sufficiently documented.  (*Id.* ¶¶210B-C.)

Plaintiffs allege that all of the Defendants, including the City, conspired and acted in concert to deprive Plaintiffs of access to courts, due process, and equal protection under the law. (*Id.* ¶¶218-219.)

## STANDARD OF REVIEW

Any defendant to a complaint may move to dismiss such a complaint under Rule 12(b)(6) for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  The plausibility standard is not a "probability standard" but it requires more than a "sheer possibility" that the allegations are true.  *Id.*

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief.  *Am. Ass'n of People with Disabilities v. Smith*, 227 F. Supp. 2d 1276, 1280 (M.D. Fla. 2002).  A trial court is required to view the complaint in the light most favorable to the plaintiff.  *Illinois ex. Rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 618, (2003).  At this stage of litigation, a court must accept the plaintiff's allegations as true and dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.  *Id.*

4

## DISCUSSION

Plaintiffs allege that Defendant, City of Tampa is liable under 42 U.S.C. §1983 for

violations of Plaintiffs' rights to due process, equal protection, and access to court, protected

under the Fifth and Fourteenth Amendments.  The City makes several arguments as to why

Plaintiffs' claim against it must fail, including that the claim is barred by the statute of limitations,

that Plaintiffs have failed to establish municipal liability under §1983, and that Plaintiffs have

failed to plead sufficient detail to sustain their conspiracy claim in Count XXII.  Plaintiffs are not

asserting a claim under Florida's Wrongful Death Act. (Pls.' Resp. Def. Mot. Dismiss 6.)

### I.    Plaintiffs' Claim is Not Barred by the Statute of Limitations

Defendant, City of Tampa, argues that the statute of limitations has expired for Plaintiffs'

§1983 claim. (Def. Mot. Dismiss 9.)  Defendant correctly notes that §1983 does not have a

prescribed statute of limitations and so the statute of limitations for civil rights claims in the

forum state applies.  Florida Statute §95.11(3)(p) sets the statute of limitations at four years for a

civil cause of action not specifically listed under F.S. §95.11.  *City of Hialeah v. Rojas*, 311 F.3d

1096, 1103 n. 2 (11th Cir. 2002).  Plaintiffs agree that the applicable statute of limitations is four

years for their §1983 claim. (Pls.' Resp. at 23.)

The statute of limitations on a cause of action does not begin to toll until the prospective

plaintiff knows or has reason to know that he has been injured and who is responsible for the

injury. *Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir. 1987).  The City argues that Plaintiffs'

cause of action accrued when FHP issued the THI report in 1999, following Kevin McGinley's

death in 1998. (Def.'s Mot. at 9.)  Defendant further argues that the 2006 and 2009 accrual dates

alleged in the Amended Complaint are meant to apply to FHP agents and not the City, and that

the Amended Complaint is "conspicuously silent" on when the conduct attributed to the City occurred.  (*Id.* at 9.)

A statute of limitations defense is an affirmative defense, *see La Grasta v. First Union Securities, Inc.,* 358 F.3d 840, 845 (11th Cir. 2004), and so it must be apparent on the face of the complaint,  *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). Defendant is correct in noting that the 2006 and 2009 accrual dates are likely referring to FHP and that there is no indication in the Amended Complaint as to when TPD undertook its independent investigation and review of the Kevin McGinley's death. (*See* Am. Compl. ¶¶9-10, 19-21, 210A-M.)  The Plaintiffs' cause of action against the City would not accrue at the earliest until TPD began its review and the Complaint makes no mention of when this review began.  (*See* Am. Compl. ¶210A-M.)  Because a statute of limitations defense is an affirmative defense, the Plaintiffs are not required to negate it in their complaint.  *La Grasta*, 358 F.3d at 845 (citing *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir. 1993)).  There is not a sufficient basis, on the face of Plaintiffs' Amended Complaint, for the Court to find that the statute of limitations on Plaintiffs' §1983 claim against the City of Tampa has expired.

## II.    Plaintiffs' Claim is Not Barred by Collateral Estoppel

Defendant, City of Tampa, argues that the issue of the statute of limitations was already settled by the Middle District of Florida in a previous suit before United States District Judge Virginia Covington. (Def.'s Mot. at 11.)  This earlier case was filed against the Florida Department of Highway Safety Motor Vehicles ("DHSMV"), FHP, and State Attorney Mark Ober.  (*Id.*)  The case dealt with the circumstances surrounding the death of Kevin McGinley and the subsequent investigation by FHP.  (*Id.* at Ex. A.)  Judge Covington found that the Plaintiffs had sufficient knowledge to create a cause of action on March 22, 1999, after the initial report

was filed by FHP. (*Id.* at Ex. A.) Thus the statute of limitations expired on March 22, 2003, long before Plaintiffs filed their claim.

Defensive collateral estoppel can be used by a defendant to prevent a plaintiff from relitigating a claim previously litigated and lost against another defendant. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.4 (1979). For a claim to be collaterally barred, there must be (1) an identical issue, (2) which was fully litigated, (3) by the same parties. *See id.* The mutuality of parties requirement has been a subject of intense debate with an emerging trend towards relaxing it. *See Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 322-27 (1971); *see also Parklane Hosiery Co.*, 439 U.S. at 328. In applying collateral estoppel, the Eleventh Circuit requires that (1) the issue be identical to the one previously litigated, (2) the issue have been actually litigated previously, (3) the prior determination of the issue must have been necessary part of the earlier judgment, and (4) the standard of proof in the previous case be at least as stringent as the standard in the present case. *Steed v. EverHome Mortg. Co.*, 308 Fed. Appx. 364, 372 (11th Cir. 2009) (citing *In re Southeast Banking Corp.*, 69 F.3d 1539, 1552 (11th Cir.1995)).

Without addressing the numerous issues raised by the Plaintiffs as to why collateral estoppel should not be applied, the Court finds that the issue is sufficiently different in the current case so as to preclude defensive collateral estoppel. While the mutuality requirement has been relaxed by the Supreme Court, *see Blonder-Tongue*, 402 U.S. at 329, the City is situated differently than the defendants in the previous case, creating a slightly, but distinctly, different issue. The prior case dealt with the responsibilities of the original investigators, and any cause of action relating to improper handling of the investigation accrued when the Plaintiffs knew or should have known about the mishandling of the investigation. The City, acting through TPD,

7

did not become involved until a later date, when it allegedly undertook an independent review and investigation. It is entirely possible that TPD began its investigation less than four years prior to Plaintiffs filing this claim, thus falling within the statute of limitations. Based on the Amended Complaint, the City is sufficiently differently situated to create a different issue as to when the statute of limitations began to toll.

## III.    Plaintiffs Have Not Stated a Claim for Municipal Liability Under §1983

In order to state a claim for municipal liability under 42 U.S.C. §1983, a plaintiff must show (1) that his constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.2d 1283, 1289 (11th Cir. 2004).[2]

### A.    Plaintiffs Have Adequately Shown That Their Constitutional Rights Were Violated

1.    Access to the Courts

Plaintiffs assert that they have been deprived of access to court as a result of the City's allegedly deficient and fraudulent investigation into the death of Kevin McGinley. (Pls.' Resp. at 15.) In order to state a claim for a constitutional violation based on denial of access to court, a plaintiff must show how they were actually harmed and that their claim had arguable legal merit. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1977). Plaintiffs allege that due to the City's actions they were unable to bring a civil claim against any culpable third party for the wrongful death of Kevin McGinley. (Am. Compl. ¶210K.) Assuming that, had the investigation been properly carried out,

---

[2] Defendants cite to *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) which imposes a lesser pleading requirement for §1983 claims: plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution of federal law and (2) such deprivation occurred under color of state law. However, *Richardson* deals with claims against individuals, not municipal liability. Municipal liability is treated differently under §1983, requiring a showing that the injury was inflicted due to the execution of a policy or custom. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

the Plaintiffs could identify the persons who allegedly pushed Kevin McGinley into the path of the truck, and the allegations in the Amended Complaint were proven true, there is arguable legal merit to their claim.

### 2.    Equal Protection Under the Law

Plaintiffs further assert that their rights to equal protection have been violated by the City's investigation. Defendant argues that the allegations of equal protection violations are vague, general, and conclusory, and thus insufficient to sustain a claim. (Def. Mot. at 5.) Plaintiffs argue exactly the opposite: that the Amended Complaint sufficiently states a claim for equal protection violations. (Pls.' Resp. at 16.) The Court finds that the Plaintiffs only mention violations of their rights to equal protection in a conclusory manner with no clear factual support. (*See* Am. Compl. ¶¶219, 212.)

### 3.    Due Process

Plaintiffs also assert that their rights to due process have been violated by the City's investigation. As the Defendant correctly notes, the Plaintiffs do not indicate whether they suffered a violation of procedural or substantive due process; thus the Court will address both. In support of their claim for due process violations, Plaintiffs appear to argue that the City's investigation was constitutionally deficient. Plaintiffs primarily take issue with the manner in which the investigation was carried out, alleging that the City failed to recommend certain witnesses be interviewed, failed to review or consider testimony from third parties, "disregarded relevant information" pertaining to Kevin McGinley's death, and disregarded emergency calls. (Am. Compl. ¶¶210D-E, G-H.) Plaintiffs also charge that the City reached conclusions that they knew to be false. (*Id.* ¶¶210C, F, I.)

9

To state a claim for a violation of substantive due process, a plaintiff must show that he was deprived of a fundamental right, one that is "implicit in the concept of ordered liberty." *Skinner v. City of Miami, Fla.*, 62 F.3d 344, 347 (11th Cir. 1995) (citing *Palko v. Connecticut,* 302 U.S. 319, 325 (1937)). While the Plaintiffs do not specifically identify the substantive right that the City deprived them of, the Amended Complaint seems to indicate a violation of the Plaintiffs' right to an investigation.[3] (*See* Am. Compl. ¶210); (*see also* Pls.' Resp. at 14.) In order for a right to be protected under substantive due process it must be guaranteed by the Constitution. *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (*en banc*). There is no substantive due process right to an investigation, guaranteed by the Constitution or otherwise. *Koger v. Florida*, 120 Fed. Appx. 327, 335 (11th Cir. 2005); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2005).

To state a claim for a violation of procedural due process, a plaintiff must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms,* 438 F.3d 1336, 1347 (11th Cir. 2006). Plaintiffs do not identify a constitutionally-inadequate process or argue that the investigatory process employed by TPD in general is deficient, they simply argue that in this instance the City did not properly follow its procedure. Furthermore, Plaintiffs do not identify a liberty or property interest that the City allegedly deprived them of except for access to court.

---

[3] Plaintiffs argue in their Response that they are not claiming a substantive right to an investigation, but rather that the City violated their rights by improperly conducting its investigation. (Pls.' Resp. at 14.) This is not a substantive due process right but rather the means by which a right was violated. The underlying right alleged appears to be a right to an investigation.

10

**B.     Plaintiffs Have Failed to Show That the City Had a Custom or Policy That Constituted  Deliberate Indifference to Plaintiffs' Constitutional Right**

To state a claim for municipal liability under §1983, Plaintiffs must allege that the municipality has officially sanctioned the wrongful act. *City of St. Louis v. Paprontik*, 485 U.S. 112, 123 (1998). Official sanction exists when it can be shown that the violation was caused by the execution of an express policy, or was caused by a widespread practice or custom. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). An unconstitutional policy "could be inferred from a single decision" by the highest officials in the municipality. *Paprontik*, 485 U.S. at 123. Furthermore, if a subordinate within a municipality acts in an unconstitutional manner, even if he acted contrary to official policy, such an act could be considered official policy if a superior with the power to set policy ratifies or approves the act. *Id.* at 126-27.

Plaintiffs do not point to any express policy by either TPD or the City as the cause of the violation. (*See* Am. Compl. ¶¶207-214.) Nor do they allege that the violation was part of a widespread custom of violations, rising to the level of official policy. (*See id.*) Plaintiffs rely entirely on the argument that the City of Tampa tacitly authorized TPD's faulty investigation by allowing the report and findings to be released to the public, and that this tacit acceptance represents the official position of the highest officials in the municipality. (Pls.' Resp. at 19-20.)

In support of their position, Plaintiffs cite to *Brooks v. Scheib*, which held that a municipality could be liable for the constitutional violations of its police department if the municipality tacitly authorizes these actions or displays deliberate indifference towards the violations. 813 F.2d 1191, 1193 (11th Cir. 1987). However, the court in that case was discussing a situation involving a pattern of violations by the police and no response by the municipality. *Id.* (noting that numerous complaints were filed against the officer in question). In the present case,

Plaintiffs only point to a single incident of misconduct, which is insufficient to establish a pattern of violations by TPD necessitating an official correction by the City.

Furthermore, Plaintiffs do not identify any particular officer or official with TPD or the City that is alleged to have undertaken this review of the investigation in Kevin McGinley's death. (*See* Am. Compl. ¶¶207-214.) Nor do they identify an officer or official who would have the authority to review the report by TPD and correct any issue with it. This is in sharp contrast to the other twenty counts where Plaintiffs identified each and every individual believed to be liable for misconduct in investigating Kevin McGinley's death. Identifying such specific actors acting on behalf of the City would certainly help establish the facial plausibility of Plaintiffs' claim.

## C. Plaintiffs Have Failed to Show That a Custom or Policy by the City Caused the Violation of Plaintiffs' Rights

Having failed to establish a constitutionally repugnant official policy or custom by the City, Plaintiffs cannot show that such a policy caused the violation of their rights. As a result, municipal liability under §1983 cannot be established based on the pleadings in the Amended Complaint. For that reason, Defendant, City of Tampa's Motion to Dismiss Count XXI of Plaintiffs' Amended Complaint, with respect to municipal liability under §1983, is **GRANTED.**

## IV. Plaintiffs Have Not Stated a Claim for Conspiracy Under §1983 or §1985(3)

Count XXII of Plaintiffs' Amended Complaint alleges a broad conspiracy encompassing all twenty one Defendants, including the City, in violation of 42 U.S.C. §1983 and §1985(3). In order to state a claim for conspiracy under §1983, the Plaintiffs must show (1) a violation of their federal rights, (2) an agreement among defendants to violate such rights, and (3) an actionable wrong. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010). To state a

12

claim under §1985(3), the Plaintiffs must show (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy. *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001.) There is no functional difference in the analysis of these two claims for conspiracy as the relate to this case, thus the Court will analyze them together.

It is not enough to simply allege in the complaint that a conspiracy existed, *see Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977), Plaintiffs must plead sufficient facts to inform the Defendant of the nature of the conspiracy alleged, *Fullman v. Graddick*, 739 F.2d 553, 557 (11t Cir. 1984).[4] Vague and conclusory allegations of a conspiracy are insufficient, Plaintiffs must make particularized allegations. *Hansel v. All Gone Towing, Inc.*, 132 Fed. Appx. 308, 309 (11th Cir. 2005).

Plaintiffs allege that the City "conspired with officers and agents of FHP and FDLE" to mislead Plaintiffs as to the circumstances of Kevin McGinley's death, obstruct the Plaintiffs from filing civil claims against responsible third parties involved in Kevin McGinley's death, deceive Plaintiffs so as to prevent criminally responsible third parties from being brought to justice, and deprive Plaintiffs of a "competent and truthful investigation" into Kevin McGinley's death. (Pls.' Resp. at 21.) These claims appear conclusory on their face as they do not indicate any specific, overt act by the City in furtherance of the conspiracy. These allegations appear even more general and conclusory in light of the fact that many of the allegations of the City's role in the conspiracy appear verbatim in allegations against each of the twenty separate defendants. (*See* Am. Compl.)

---

[4] The Court notes that these cases were decided prior to *Twombly* and *Iqbal* which abandoned the old notice pleading requirements in favor of the more stringent "facial plausibility" standard.

Plaintiffs appear to argue that the City acted overtly in furtherance of the conspiracy by issuing the report confirming FHP's THI report. (Pls.' Resp. 23.) However, there is nothing on the face of the Complaint that suggests this action was taken in concert with other alleged members of the conspiracy, or that it was anything other than an independent act by the City. (*See* Am. Compl. ¶210.) Without more facts to support the allegations, Plaintiffs' claim of conspiracy in violation of §1983 and §1985(3) appears conclusory and vague. As a result, Defendant, City of Tampa's Motion to Dismiss Count XXII, with respect to conspiracy in violation of §1983 and §1985(3) to the extent it involves this Defendant, is **GRANTED**. Accordingly it is:

**ORDERED** that Defendant, City of Tampa's Motion to Dismiss (Doc. 5) is **GRANTED** with respect to Counts XXI and XXII. The Defendant, City of Tampa is dismissed from this action.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 29th day of June, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies to: All parties and counsel of record.

14